**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| | **x** | |
| | **:** | Case No. _____ |
| SAMANTHA METTLER, on behalf of herself and all others similarly situated, | **:** | |
| | **:** | CLASS ACTION COMPLAINT |
| *Plaintiff,* | **:** | |
| | **:** | DEMAND FOR JURY TRIAL |
| | **:** | |
| v. | **:** | |
| | **:** | |
| APPLE INC. | **:** | |
| | **:** | |
| *Defendant.* | **:** | |
| | **:** | |
| | **x** | |

Plaintiff SAMANTHA METTLER, on behalf of herself and all others similarly situated, brings this Class Action Complaint (the "Complaint") against Defendant APPLE INC. for violations of Illinois' state law as set forth herein in connection with Defendant's unlawful collection of biometric information (the "Action"), which Plaintiff makes based upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of counsel as follows:

**NATURE OF THE ACTION**

1.      Apple is one of the most ubiquitous and ever-present technology product companies in the world.

2.      Their advertising heavily leans on representations related to the privacy that they provide for their consumers – so much so, that they even created an alternative logo that makes over the Apple trade dress as a privacy-centric logo[1]:



---

[1] "Data Privacy Day at Apple: Improving transparency and empowering users," APPLE NEWSROOM (Jan. 27, 2021), https://www.apple.com/newsroom/2021/01/data-privacy-day-at-apple-improving-transparency-and-empowering-users//.

3.      Through advertisements like the above, and others set forth in this Complaint, Apple tries to bake privacy representations into their brand – creating a popular belief that Apple's respect for privacy is at the forefront of their guiding principles for their technology products.

4.      This, however, is demonstrably false.

5.      This Action is about the unlawful collection of iris or retinal scanning by one of the largest corporations in the world, Apple, without adequate consent.  Plaintiff Mettler and Class members are Illinois residents who own Apple Devices (defined below)[2] and who use Apple's facial recognition feature ("Face ID") for the purposes of using said Apple Devices.

6.      By Apple's own admission, deep within the content of its own website, and using the technology that Apple already deploys elsewhere, Apple collects scans of the iris and retina of each person who uses Face ID even though Apple never expressly informs them in writing.  This violates the Illinois Biometric Information Privacy Act ("BIPA"), which requires express written consent when collecting biometric information.  However, one such collection of one form of biometric information does not garner consent for the collection of another - as is the case here. While Apple does inform Plaintiff and Class members of the collection of facial template data for facial recognition purposes through the Face ID feature, it never discloses to users that it is collecting iris and retinal scans while doing so - which is an entirely different and additional form

---

[2] The "Apple Devices" which are Face ID enabled include Apple's iPhone X, XR, XS Max, XS, 11, 11 Pro, 11 Pro Max, 12, 12 Mini, 12 Pro, 12 Pro Max, 13, 13 Mini, 13 Pro, 13 Pro Max, 14, 14 Plus, 14 Pro, 14 Pro Max, 15, 15 Plus, 15 Pro, 15 Pro Max, 16, 16 Pro, 16 Pro Max, 16 Plus, 16e, 17, 17e, 17 Pro, 17 Pro Max, and Air, as well as Apple's iPad Pro 13-inch (M4 and M5), Pro 11-inch (M4 and M5), iPad Pro 12.9-inch (3rd through 6th generations), and Pro-11 inch (1st through 4th generations).

*See,* https://support.apple.com/en-us/102854, (published March 10, 2026).

of biometric information collection which was not consented to. In fact, Plaintiff and Class members had no knowledge of this.

7. Apple collects this information whether Face ID is being used for unlocking an Apple Device or not.

8. Specifically, Apple, in the recesses of its website, requires that Face ID cannot be set up unless "the camera can see your eyes" while using Face ID to ensure that the user is actually looking at their phone; this is because Apple's Face ID uses technology that collects iris or retinal scans.[3] As Apple states, "Face ID recognizes if your eyes are open and your attention is directed toward the device. This makes it more difficult for someone to unlock your device without your knowledge (such as when you are sleeping)."[4]

9. Additionally, Apple states that the camera used for Face ID, which is called the TrueDepth camera, still activates to monitor the presence of ones' iris or retinal location, stating, "[e]ven if you don't enroll in Face ID, the TrueDepth camera intelligently activates to support attention aware features, like diming the display if you aren't looking at your [Apple Device] or lowering the volume of alerts if you're looking at your device. For example, when using Safari [web browser], your device checks to determine if you're looking at your device and turns the screen off if you aren't."[5] This is not possible without monitoring the location of ones iris or retinal scans, it too is never disclosed to users - and it simply is not lawful under BIPA.

---

[3] https://support.apple.com/en-us/102381, (published Dec. 9, 2024).

[4] *Id.*

[5] *Id.*

10.     Apple even makes it possible to turn the feature of collecting iris or retinal position off when using Face ID, but this is an opt-out feature: and one that Plaintiff and Class members would not be aware of because it is an "Accessibility Option" and not a privacy-centric one.[6]

11.     To compound matters, Apple converts these scans into mathematical data sets and uses machine learning to continue to train its own algorithms to improve their product - namely, it collects biometric information in the form of iris or retinal scans before using that information to improve its own biometric collection systems.[7]  This too is not communicated by Apple to Plaintiff and Class members before this process takes place.   While Apple claims they cannot retrieve any of these mathematical data sets because they are stored in the form of a digital vault called the "Secure Enclave," the mathematical data sets are also inaccessible to Plaintiff and Class members - who also cannot delete this data or otherwise eliminate Apple's ability to train its algorithms with it.[8]

12.     While Apple prides itself on privacy - this Action illuminates why Apple's representations on privacy are imperfect and do not align with these representations.

13.     On behalf of themselves and all other similarly situated Illinois residents, Plaintiff Mettler brings this Action against Defendant Apple, Inc. under the Illinois Biometric Information Privacy Act ("BIPA") to seek actual and statutory damages, other forms of redress and injunctive relief for the privacy violations set forth herein.

---

[6] *Id.*

[7] *Id.*

[8] https://support.apple.com/guide/security/the-secure-enclave-sec59b0b31ff/web, (published Dec. 19, 2024).

**JURISDICTION AND VENUE**

14. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act because (1) there are more than 100 putative Class members, (2) the aggregate amount-in-controversy, exclusive of costs and interest, exceeds $5,000,000.00, and (3) there is minimal diversity because Plaintiff and Defendant are citizens of different states – namely, that Plaintiff is an Illinois resident and the Defendant is headquartered in California.

15. *Personal Jurisdiction.* This Court has personal jurisdiction over the Defendant because the Plaintiff and Class members are domiciled in this District, Defendant is registered to do business in Illinois and Defendant has been sued before in this District as well. Additionally, this Court has personal jurisdiction over the Defendant because they have substantial contacts with this District and have purposely availed themselves to the Courts in this District.

16. *Venue.* In accordance with 28 U.S.C. 1391, venue is proper in this District because a substantial part of the conduct giving rise to the Plaintiff's claims occurred in this District, the Defendant is headquartered in this District, and the Defendant transacts business within this District. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed themselves of the laws and markets within this District.

## PARTIES

### PLAINTIFF

#### *Plaintiff Samantha Mettler*

17.     Plaintiff Mettler is an Illinois resident domiciled in Dekalb County, Illinois.

18.     Plaintiff Mettler's biometric identifiers were unlawfully collected by Apple by way of an Apple Device which both had Face ID enabled and utilized a TrueDepth camera to analyze her iris or retinal position.  Plaintiff Mettler had no idea that her biometric identifiers – specifically, her iris and retinal position – were being used to identify her when Face ID was being utilized and when TrueDepth was implementing its automatic attention features.

19.     As a result of Defendant's conduct, Plaintiff Mettler is gravely concerned and upset about the collection of this biometric information – which she views as a form of surveillance without adequate consent.  Additionally, Plaintiff Mettler was harmed by way of state law, which provides redress for the unlawful collection of biometric information without adequate consent because of the inherent privacy concerns related to biometric information collection

### DEFENDANT

#### *Defendant Apple Inc.*

20.     Defendant Apple Inc. is a Cupertino, California-based technology product company. Apple is publicly traded under the stock symbol APPL.

21.     Defendant Apple Inc. is the manufacturer, developer, distributor, and seller of the Apple Products as discussed herein – as well as the creator and programmer for TrueCamera, the Face ID feature, and the Attention Features as discussed both above and below.

## FACTUAL ALLEGATIONS

### *BIPA and The Importance of Protecting Biometric Information*

22.     Biometric data is extremely sensitive.

23.     There are two main classes of biometrics data that can be collected from individuals: (1) behavioral characteristics and (2) physiological characteristics. Behavioral characteristics concern the behavior of an individual, while physiological characteristics concern the shape or composition of the individual's body. Behavioral biometrics include an individual's keystroke, signature, and voice recognition. Physiological biometrics include facial recognition, fingerprint scanning, hand geometry, iris scanning, and DNA. Facial recognition systems use an individual's physiological information, such as facial structure, eye color, size, and shape.[9]

24.     Biometric identifiers come in a variety of forms, including fingerprints, palm prints, iris/retinal scans, and scans of the facial geometry (facial recognition), which are unique to each person. There is a critical need for protecting and securing biometric identifiers because biometric identifiers:

- Create a specific link between an individual and a data record;

- Can be used to create fake digital identities for fraudulent purposes; and,

- Create a form of identification which is not exchangeable.

- Are immutable, and, if compromised by, for example, hacking, the biometric identifiers cannot be changed.

25.     Consumer businesses, like Defendant, can use biometrics to identify consumers and link data to that consumer, including linking a consumer's biometric identifier to methods of

---

[9] Angelica Carrero, *Biometrics and Federal Databases: Could You Be in It?*, 51 J. MARSHALL L. REV. 589, 589–92 (2018).

payment, such as their credit cards and debit cards. The result is the creation of a vast repository of information (consumer purchasing history, purchasing habits, medical history for services paid with that credit card, etc.) that is tied to customer biometric information.

26. "Verification and identification are the two ways in which an individual's identity can be determined using biometric technology. Verification confirms that a person is indeed who they claim to be and performs a one-to-one comparison of the individual's [biometric] sample with a stored reference template. Identification, on the other hand, performs a one-to-many comparison to confirm an individual's identity. The identification process compares the individual's [] sample against all the reference templates stored on file. An individual is positively identified if the individual's [] image matches any of the stored templates."

27. Legislatures have correctly identified that the privacy rights tied to biometric identifiers is a worthy right warranting statutory protection. As such, state legislatures and city councils across the country have either passed or are considering passing biometric privacy statutes in order to protect the privacy rights of their constituents.

28. In 2008, prior to the passage of BIPA, the Illinois legislature stated the following in their findings regarding the collection of biometric information by private businesses, "[t]he use of biometrics is growing …. The full ramifications of biometric technology are not fully known. The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Illinois House Transcript*, 2008 Reg. Session No. 276.

29. As such, BIPA, the Biometric Information Privacy Act (740 ILCS 14/1, *et seq*.), was passed by the Illinois legislature in 2008 because biometric identifiers can function as a unique digital "fingerprint" or set of data that allows the subject to be identified by various types of

biometric scanning. Per the statute, a "biometric identifier," which is what is collected by a biometric scanner – like a camera, or a digital fingerprint collector – "means a retina, iris scan, a fingerprint, a voiceprint, or a scan of the hand or facial geometry." Additionally, under the statute, "biometric information" is defined as "any information, regardless of how it is captured, converted, stored, or based on an individual's biometric identifier to identify an individual. 740 ILCS 14/5.

30. Because people cannot change their biometric identifiers, they will *always* be identifiable by biometric scanner.

31. BIPA prohibits a private entity from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information under 740 ILCS 14/15(a)-(b):

    a. With respect to retention schedule and deletion schedule (740 ILCS 14/15(a)):

        i. A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interation with the private entity, whichever occurs first.

    b. With respect to collection, capture and sharing (740 ILCS 14/15(b)):

        i. No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or information unless it first:

1. Informs the subject or the subject's legally authorized representative in writing that biometric identifier is being collected or stored;

2. Informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier is being collected, stored, and used; and,

3. Receives a written release executed by the subject of the [biometrics] or the subject's legally authorized representative.

32.     This Action alleges that the Defendant, Apple, violated every single prong of BIPA.

### *Defendant's Collection of Biometric Information and Identifiers*

33.     Defendant Apple, a Cupertino, California based corporation, is the biggest technology companies in the world.

34.     Apple, according to their Securities Exchange Commission annual filings, "designs, manufactures, and markets smartphones, personal computers, tablets, wearables, and accessories, and sells a variety of related services.[10]

35.     These products are part of the same software ecosystem, often called the "iOS" ecosystem, which means that they all run on Apple's unique operating system that operates across these various types of technology products.  Apple often markets its products, including the Apple Devices, as privacy-centric.

36.     The Apple Devices are all outfitted with TrueDepth cameras, which are consumer-facing cameras installed and integrated into the Apple Device itself where the consumer would be looking at the device.[11]   According to Apple, the TrueDepth camera system is "state-of-the-art"

---

[10] Apple, Inc., 2025 S.E.C. Form 10-k, *at* 1.

[11] https://support.apple.com/en-us/102381, (published Dec. 9, 2024).

and uses "advanced technologies to accurately map the geometry of the face." The core utilization of the TrueDepth Camera is FaceID.[12]

37.     FaceID, according to Apple, contains "technology [which is] some of the most advanced hardware and software we've ever created. The TrueDepth camera captures accurate face data by projecting and analyzing thousands of invisible dots to create a depth map of your face and also captures an infrared image of your face. A portion of your device's neural engine – protected within the Secure Enclave – transforms the depth map and infrared image into a mathematical representation and compares that representation to the enrolled facial data. FaceID automatically adapts to changes in your appearance."[13]

38.     The way that the TrueCamera and FaceID do all of this is through the monitoring and scanning of Plaintiff and Class members' iris and retinas – which is forbidden by BIPA without adequate written consent.

39.     Apple requires that Face ID cannot be set up unless "the camera can see your eyes" while using Face ID to ensure that the user is actually looking at their phone; this is because Apple's Face ID uses technology that collects iris or retinal scans.[14] As Apple states, "Face ID recognizes if your eyes are open and your attention is directed toward the device. This makes it more difficult for someone to unlock your device without your knowledge (such as when you are sleeping)."[15] Indeed, to unlock a device using FaceID, Apple states all one needs to do is "simply glance at it."[16] Apple only allows for authentication of a person's identity using Face ID if "the

---

[12] *Id.*
[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

user's eyes are open and their attention is directed at their [Apple Device]" and that "attention detection is always required when using Face ID with a mask."[17]  This, put differently, means that when Apple cannot verify your facial template because the user is wearing a mask, it can and does do so through verification of ones iris or retinal scan.

40.     Additionally, still activates to monitor the presence of ones' iris or retinal location for its 'Attention Features,' stating, "[e]ven if you don't enroll in Face ID, the TrueDepth camera intelligently activates to support attention aware features, like diming the display if you aren't looking at your [Apple Device] or lowering the volume of alerts if you're looking at your device. For example, when using Safari [web browser], your device checks to determine if you're looking at your device and turns the screen off if you aren't."[18]  This  is not possible without monitoring the location of ones iris or retinal scans, it too is never disclosed to users - and it simply is not lawful under BIPA.  Indeed, to unlock a device using FaceID, Apple states all one needs to do is "simply glance at it."

41.     Apple even makes it possible to turn the feature of collecting iris or retinal position off when using Face ID, but this is an opt-out feature: and one that Plaintiff and Class members would not be aware of because it is an "Accessibility Option" and not a privacy-centric one.[19] Other applications which have gained access to Apple's TrueDepth camera, despite the representations that the TrueDepth camera is secure, have shown that the TrueDepth camera does

---

[17] https://support.apple.com/guide/security/biometric-security-sec067eb0c9e/web, (last accessed Jul. 4, 2026).

[18] *Id.*

[19] *Id.*

an analysis of scans of the iris and retina; this includes a mobile application which did or currently

exists called MeasureKit:



42.     As this shows on the right, the "face data" collected details what the TrueCamera

is doing – and it monitors iris and retinal positions using iris and retina scanning.  Privacy

advocates sounded the alarm when this MeasureKit was released because of the implications that

third parties or nefarious actors could gain control over Apple's TrueCamera facial recognition systems – which were purportedly secure.[20]

43.     In direct contravention to BIPA, there are no adequate releases when the user enables FaceID for the collection of iris or retinal scans; additionally, in direct contravention of BIPA, Apple does not disclose the Attention Features which also monitor iris or retinal positions, which can only be done through iris or retinal scanning.

## CLASS ALLEGATIONS

44.     Plaintiff seeks to certify a class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) who fall under the following definition (collectively, the "Class"):

> **Class Definition.** All Illinois residents who had their biometric identifiers, including scans of their iris or retina, collected, captured, received, or otherwise obtained by Apple by their Apple Devices due to the use of Face ID or Attention Features.

45.     Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

46.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On

---

[20] Juli Clover, *"Privacy Advocates and Developers Raise Concerns About Third-Party App Access to TrueDepth Camera,"* MACRUMORS (NOV. 30, 2017), at https://www.macrumors.com/2017/11/30/truedepth-camera-third-party-app-concerns/.

information and belief, Class Members number in the millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

48. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

     i.   Whether Defendant collected biometric identifiers;

     ii.   Whether Defendant violated the Biometric Information Privacy Act; and,

     iii.   Whether Plaintiff and the Classes are entitled to damages, statutory damages, and/or injunctive relief.

49. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

50. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendants in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein.

51. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representatives of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members they seek to represent. Plaintiff has retained counsel competent and experienced in complex privacy and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

52. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**

("BIPA")

740 ILCS 14/1, *et seq.*

53.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

54.     BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: "(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. . . ." 740 ILCS 14/15(b).

55.     Apple is a California corporation and thus qualifies as a "private entity" under BIPA.

56.     Plaintiff and Class members are individuals who had their "biometric identifiers" and "biometric information," including scans of their facial geometry, collected, captured, received, or otherwise obtained by Apple from videos that were taken by HomeKit enabled cameras from within the state of Illinois. *See* 740 ILCS 14/10.

57.     Apple systematically and automatically collected, used, and stored Plaintiff's and Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

58. In fact, Apple failed to properly inform Plaintiff or the Class in writing that their biometric identifiers and/or biometric information was being "collected or stored" by Apple, nor did Apple inform Plaintiff or Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being "collected, stored and used," as required by 740 ILCS 14/15(b)(1)-(2).

59. By collecting, storing, and using Plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Apple violated the rights of Plaintiff and each Class member to keep private these biometric identifiers and biometric information, as set forth in BIPA.

60. Individually and on behalf of the proposed Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Ring to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) statutory damages for each intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20 (2), or alternatively, statutory damages pursuant to 740 ILCS 14/20(1) if the Court finds that Apple's violations were negligent; and (3) reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

61. WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully submit that this Court enter an order:

a. Certifying this case as a class action on behalf of the above-defined class;

b. Appointing Plaintiff as representative of the Class and appointing their listed counsel as Class Counsel;

c. Declaring that Apple's actions, as set forth above, violate BIPA;

d. Awarding statutory damages for each and every reckless and intentional violation of BIPA, or, alternatively, statutory damages for each and every negligent violation of BIPA;

e. Awarding injunctive relief and other equitable relief to protect the interests of the Class;

f. Awarding Plaintiff and members of the Class their reasonable litigation expenses and attorneys' fees;

g. Awarding Plaintiff and members of the Class pre- and post- judgment interest, to the extent allowable;

h. And, awarding any other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

62. Plaintiff hereby demands a trial by jury.

DATED: July 4, 2026

Respectfully submitted,

*s/ Blake Hunter Yagman*
Blake Hunter Yagman
*blake.yagman@yagmanpllc.com*
**YAGMAN PLLC**
RXR Plaza
626 RexCorp Plaza, Suite 605
Uniondale, New York 11556
Tel.: (929) 709-1493

*Attorneys for Plaintiff Mettler*
*and members of the Proposed Class*